# BEVERLY ANN POUNCEY v. STATE OF MARYLAND

[No. 135, September Term, 1982.]

*Decided September 19, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Michael R. Braudes, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. COLE, J., concurs in the result.

The issue before us is whether a defendant in a criminal case properly can be found both guilty of a crime and insane at the time of its commission.

Appellant was charged with first degree murder of her five-year-old son. She interposed pleas of not guilty and insane at the time of the commission of the crime. The evidence at the nonjury trial in the Circuit Court for Howard County disclosed that the appellant drowned her son because she believed that the devil was pursuing him and that the only way to prevent him from going to hell was to kill him. The evidence further disclosed that the appellant was legally insane at the time the crime was committed. On July 1, 1982, the court (Nissell, J.) found the appellant both guilty of first degree murder and legally insane at the time of the offense. The appellant was thereafter committed to the State Department of Health and Mental Hygiene for evaluation and commitment pursuant to Maryland Code (1982), § 12-110 of the Health-General Article. She appealed to the Court of Special Appeals, claiming that the verdicts of guilty and insane were mutually inconsistent and that she was entitled to the entry of a not guilty verdict on the murder charge. We granted certiorari prior to decision by the intermediate appellate court to consider the important issue raised in the case.

The origin and development of the insanity defense has been the subject of considerable scholarly and judicial attention. *See, e.g., Young v. State,* 14 Md. App. 538, 288 A.2d 198 (1972). In Maryland, the defense is defined by statute and court rule. In Code (1982), § 12-101 (d) of the Health-General Article, "insane" is defined as "not responsible for criminal conduct under the rule set forth in § 12-107 of this title." Section 12-107 identifies the test of responsibility for criminal conduct:

"A defendant is not responsible for criminal conduct if, at the time of that conduct, the defendant, because of mental retardation or a mental disorder, lacks substantial capacity:

(1) To appreciate the criminality of that conduct; or

(2) To conform that conduct to the requirements of law."

Maryland Rule 731 prescribes the method by which insanity may be placed at issue in a criminal case. Subsection a provides:

"A defendant may plead not guilty, guilty, or, with the consent of the court, *nolo contendere.* In addition to any of these pleas, the defendant may interpose the defense of insanity as permitted by law."

Subsection b provides that the defense of insanity

"shall be interposed in writing by the defendant or his counsel and shall allege that the defendant was insane at the time of the commission of the offense charged."

*Accord:* § 12-108 (a) of the Health-General Article. Once properly entered, a special verdict on the insanity defense must be rendered. *See* § 12-108 (b) and (c).

In *Langworthy v. State,* 284 Md. 588, 399 A.2d 578 (1979), we held that a person found guilty of the crime charged, yet successful in asserting an insanity defense, could appeal

from the guilty verdict. Necessary to our decision was a finding that a guilty verdict is not inconsistent with a special verdict of insanity. In that case, as here, there was a general plea of not guilty and a plea alleging insanity at the time of the commission of the offenses. We there set forth the effect of a guilty verdict on the general plea of not guilty and a special verdict that the accused was insane at the time of the crime. We said:

> "[In that event, the accused] has failed in what he sought under his general plea but attained what he sought by his additional plea, in that he shall not be held responsible for his criminal conduct. Two courses are then open in the trial court. In its discretion, it may either turn him loose or, as authorized by Code (1957, 1972 Repl. Vol.) art. 59, § 27, commit him 'to the Department of Mental Hygiene for confinement in one of the facilities of the State for examination and evaluation to determine, by the standards applicable to civil admission proceedings under §§ 11 and 12 of [art. 59], whether such person by reason of mental disorder would, if he becomes a free agent, be a danger to himself or to the safety of the person or property of others. Upon the basis of the report by the facility, and any other evidence before it, the court may in its discretion, direct that the person be confined in a facility designated by the Department for treatment.' " 284 Md. at 594.[1]

In *Langworthy,* the claim was made that the finding of insanity was the functional equivalent of an acquittal. That argument had prevailed at the intermediate appellate court. In reversing, we said:

> "The Court of Special Appeals dismissed Langworthy's appeal, holding that 'a defendant, except under rare circumstances not here apposite,

---

[1] The Article 59 provisions have since been recodified in the Health-General Article of the Code.

has no right to take an appeal from an acquittal.' *Langworthy v. State,* 39 Md. App. at 559-560. The fallacy in this reasoning is that Langworthy was found guilty of rape, and the dismissal of the appeal precluded appellate review of that conviction. As we have seen, the existing statutory scheme patently contemplates that there be first a determination of guilt or innocence under the general plea. . . .

"In short, the clear legislative intent regarding the successful interposition of a plea of insanity is not that an accused is to be found not guilty of the criminal act it was proved he committed, but that he shall not be punished therefor. Rather than be punished, he may go free or, under prescribed circumstances, be provided treatment for his mental disorder. Thus, the Court of Special Appeals was not correct when it indicated that Langworthy was 'not guilty' by reason of insanity nor was the trial judge correct when he spoke in those terms in indicating from the bench what he intended to do." *Id.* at 598.

Thus, in the clearest possible terms, *Langworthy* disposes of the contention that a criminal defendant cannot be found both guilty and insane.[2]

Appellant nonetheless seeks to avoid the effect of *Langworthy.* She argues that because "she was ultimately found insane, the finding of guilt was divested of legal signif-

---

2. Appellant notes that Section 12-110 of the Health-General Article defines the procedure to be followed when "an individual is found not guilty of a crime by reason of insanity." As we commented about the predecessor statute in *Langworthy,* "[w]e believe the reference to 'not guilty by reason of insanity' is a holdover from common law concepts and prior statutory provisions regarding insanity and the commission of crimes." *Id.* at 599 n. 12. Since *Langworthy,* the provision has been recodified without change. We see no reason to interpret the recodified statute any differently, especially in light of the maxim that readoption of statutory language by the legislature without change is presumed to have incorporated prior judicial interpretations of that language. *See* American Legion v. State, 294 Md. 1, 447 A.2d 842 (1982); Supervisor v. Southgate Harbor, 279 Md. 586, 369 A.2d 1053 (1977).

icance for purposes of her future status as a criminal or non-criminal." She maintains that, as a matter of law and policy, a person found legally insane and hence not responsible for a crime may not be subjected to the stigma and consequences of a criminal conviction. A successful plea of insanity, she urges, is a complete defense to a charge of a crime and is inconsistent with a finding of criminal guilt. She contends that in an enlightened society criminal responsibility does not attach to the actions of a person insane at the time of the commission of a crime; that a successful insanity defense, by its nature, totally excuses criminal conduct because it recognizes an absence of moral blameworthiness and is therefore inconsistent with labelling the defendant as a "criminal"; and that a crime committed by an insane person is not an egregious act but is a tragic accident, more akin to unintended damage inflicted by a person in the throes of a mental disorder. The appellant further argues that if she is burdened by a record of conviction of first degree murder, she will in a practical sense have been found responsible for her conduct; that the stigma of such a "conviction" punishes her for her conduct in that, among other things, it prohibits her from voting, from serving on a jury, from acquiring various government licenses or contracts, and also inhibits future employment opportunities since prospective employers will ascertain that she was found guilty of first degree murder.

As we have already observed, a criminal defendant in Maryland may be found guilty but insane, it being clear from *Langworthy,* 284 Md. at 588, n. 12, that a finding of insanity is not tantamount to an absence of *mens rea,* or inconsistent with a general intent to commit a crime. In drowning her child, the appellant specifically intended to kill him, and while her successful insanity defense means that she is not criminally responsible for her conduct, that determination merely relieves her of liability for punishment under the criminal law. No criminal sentence may ever be entered on the guilty verdict in this case and the appellant, therefore, does not stand "convicted" of the

murder offense in the traditional sense of the criminal law. The legislature, however, has not seen fit to remove all consequences of committing a criminal act while insane, *e.g.,* the defendant may be held in a mental institution until it is determined that release would not constitute a danger to the individual or to the person or property of others. § 12-114 (b) (1) (ii). There is thus no support for the view that noncriminal collateral consequences are in all circumstances inconsistent with guilty but insane verdicts.

We need not here consider the effect of the guilty verdict upon the particular collateral consequences to which the appellant alludes. All that is now before us is whether, in view of such possible collateral consequences, the law requires that we strike the guilty verdict and direct entry of a not guilty verdict. As indicated, the governing law does not permit such an action on the Court's part.

*Judgment affirmed, with costs.*

Cole, J., concurs in the result.