536 A.2d 622

**John Gerard HOEY, Jr.**

v.

**STATE of Maryland.**

**No. 11 Sept. Term, 1986.**

Court of Appeals of Maryland.

Feb. 5, 1988.

474

George Lipman and George E. Burns, Jr., Asst. Public Defenders, Baltimore (Alan H. Murrell, Public Defender, and Kathleen M. Brown, Assigned Public Defender, on the brief) for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., on the brief) for appellee.

Argued before MURPHY, C.J., and SMITH,[*] ELDRIDGE, COLE, RODOWSKY, COUCH [*] and McAULIFFE, JJ.

COLE, Judge.

We shall answer three questions in this appeal: (1) Were the defendant's confessions, under the circumstances presented, properly admitted at trial? (2) Was the testimony of a treating psychiatrist, introduced by the State to rebut the defendant's proof of his lack of criminal responsibility, admissible when the State failed to disclose the expert witness to the defendant during discovery? and (3) Was it constitutional to place the burden of proof on the defendant to show that he was "not criminally responsible" for the crimes he committed?

We summarize the facts as follows. On January 14, 1985, John Hoey threw a Molotov cocktail at a building in Baltimore County. Detective Norman Snyder of the Baltimore County Police Department Arson Squad was called to investigate the incident. The next day police officer Jeffrey Parry, having heard a police broadcast that Hoey was a suspect, stopped Hoey at a convenience store and notified

---

[*] Smith and Couch, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, they also participated in the decision and adoption of this opinion.

Detective Snyder. When Detective Snyder arrived at the convenience store, he arrested Hoey and searched the car Hoey was driving. Detective Snyder's search uncovered illegal weapons. Based on these facts, Hoey was charged with attempted storehouse burning, possession of a Molotov cocktail, and wearing or carrying a concealed and dangerous weapon. A police officer took Hoey to the station, where Detective Snyder, using the Baltimore County Police Department's standard rights and waiver form,[1] advised Hoey of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Detective Snyder read each right out loud and underlined each word as he read it so that Hoey could read along. Hoey placed his initials beside each line and signed the waiver form. Within fifteen minutes, Hoey orally confessed to the crimes and wrote out an inculpatory statement.

Prior to Hoey's trial, Hoey's attorney moved to suppress Hoey's confessions because they were "involuntary and/or elicited during custodial interrogation without the observance of mandatory procedural safeguards required by law." At the suppression hearing, Dr. Michael Spodak, an expert in the field of forensic psychiatry, testified for the defense that he had examined Hoey on March 27, 1985, and that Hoey suffered from schizophrenia. Dr. Spodak further testified that Hoey's mental disorder rendered him incapable of making a knowing, voluntary, and intelligent waiver of his rights. To buttress Dr. Spodak's conclusion, Hoey's father testified that Hoey had been acting peculiarly and abnormally on January 14, 1985. Hoey testified that he felt fine on the day of his arrest, but that his only recollections of the police interrogation were that he was not allowed to make a phone call and Detective Snyder promised him that the State would go easy on him if he confessed.

---

**1.** The Baltimore County Police Department's standard waiver form informs the interviewed suspect that, *inter alia,* he has the right to remain silent, that anything he says can be used against him in court, that he has the right to an attorney at any time, and that an attorney will be provided by the court if he cannot afford one.

In response to this testimony, Officer Parry testified that when Hoey was stopped, Hoey appeared cognizant of his surroundings and responded normally to questions and directives. Detective Snyder testified that at the time Hoey waived his rights and confessed, he appeared to understand what was happening and answered questions responsively. Detective Snyder also testified that after Hoey orally confessed, he suggested to Hoey that he make a written confession because it would protect both parties from any later disagreements as to what Hoey had actually admitted. Detective Snyder expressly denied making any promise of leniency to Hoey in exchange for a confession.

After all the witnesses had testified at the suppression hearing, the trial judge found as a fact that Detective Snyder had not promised Hoey that the State would go easy on him if he confessed. The trial judge also found that Hoey's statements had been made freely, voluntarily, and capably. Accordingly, the judge denied Hoey's motion to suppress.

At trial, Hoey entered both a plea of not guilty and a plea of not criminally responsible. During the State's case in chief, Detective Snyder testified that Hoey orally admitted throwing a Molotov cocktail at the building in question. In addition, the State introduced Hoey's written confession and corroborating evidence to support the offenses charged. Hoey then attempted to prove, through the testimony of Dr. Spodak, that he was not criminally responsible for his acts. In rebuttal, the State called to the stand Dr. David Helsel, Hoey's treating psychiatrist from January 15, 1985 until February, 1985. Defense counsel objected to the admission of Dr. Helsel's testimony because the State had not disclosed its intention to call Dr. Helsel as a witness, and thus defense counsel was unprepared to cross-examine Dr. Helsel. The trial judge adjourned court early that day to permit defense counsel time to prepare. The trial judge allowed Dr. Helsel to testify the next morning.

At the conclusion of the trial, the jury was instructed that the State had the burden of proof beyond a reasonable

doubt on each element of the offenses and that Hoey had the burden of proof by a preponderance of the evidence on the issue of his lack of criminal responsibility. Hoey objected to the burden of proof instruction. The jury found Hoey guilty of, and criminally responsible for, each charge. Hoey appealed his convictions to the Court of Special Appeals, but we granted certiorari before consideration by the intermediate appellate court.

## I

We shall first address the question of whether Hoey's confessions were properly admitted at trial. In Maryland, a defendant's confession is only admissible if it is (1) voluntary under Maryland nonconstitutional law, (2) voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 22 of the Maryland Declaration of Rights,[2] and (3) elicited in conformance with the mandates of *Miranda. See Lodowski v. State,* 307 Md. 233, 250, 513 A.2d 299, 308–09 (1986) (*Lodowski II* ); *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Hoey contends that his confessions and waiver were involuntary because he suffered from a mental disability and Detective Snyder coerced the statements from him. The State argues that there was sufficient evidence presented to the trial judge to support a finding that Hoey's confessions and waiver were voluntary. We agree with the State that Hoey's confessions were voluntary and thus properly admitted. We explain.

## A.

■ We shall first examine whether Hoey's confessions were voluntary under Maryland nonconstitutional law. A

---

**2.** Article 22 of the Maryland Declaration of Rights, entitled "self-incrimination," guarantees that "no man ought to be compelled to give evidence against himself in a criminal case." Article 22 is deemed to be in *pari materia* with the Fifth Amendment of the United States Constitution. *Lodowski v. State,* 307 Md. 233, 249, 513 A.2d 299, 308 (1986); *State v. Kidd,* 281 Md. 32, 375 A.2d 1105 (1977). Thus, we will not discuss Article 22 independently.

confession is voluntary under Maryland nonconstitutional law if it is "freely and voluntarily made at a time when [the defendant] knew and understood what he was saying." *Wiggins v. State,* 235 Md. 97, 102, 200 A.2d 683, 686, *cert. denied,* 379 U.S. 861, 85 S.Ct. 123, 13 L.Ed.2d 64 (1964); *see also Lodowski II,* 307 Md. at 254, 513 A.2d at 310–311 (quoting *State v. Hill,* 2 Md.App. 594, 601–602, 236 A.2d 27, 31 (1967)); *Mundell v. State,* 244 Md. 91, 93, 223 A.2d 184, 185 (1966).

■ The first step in determining whether a confession is voluntary under Maryland nonconstitutional law is to determine whether the defendant was mentally capable of making a confession. In *McCleary v. State,* 122 Md. 394, 89 A. 1100 (1914), the defendant claimed that his confession was inadmissible because he was mentally irresponsible at the time he confessed. There was testimony before the trial judge that on the eve of the defendant's confession he heard groans, saw ghosts, and thought he was fighting wild beasts. There was also testimony that the day after the defendant's confession he spoke irrationally and incoherently. The State's Attorney and jail physician, however, testified that while the defendant may have been excited on the day he confessed, he was far from being irrational. This Court held that the question was not whether the defendant "was mentally agitated, but [whether he] was ... so far deprived of his sense of reason as not to be responsible for what he may have done or said." *Id.* at 402, 89 A. at 1103. Thus, the Court concluded that there was sufficient evidence to support the trial court's conclusion that the defendant was mentally capable of understanding what he said when he confessed. *Id.* at 403, 89 A. at 1104.

Similarly, in *Wiggins, supra,* the defendant argued that his confession was inadmissible because his mental condition was impaired due to alcohol withdrawal. The defendant suffered delirium tremens and had hallucinations while he was in police custody. At trial, the defendant produced evidence that the day after he confessed he told the police that "he had rabbits in his hands and had pulled 'angel's

hair' from his body." *Id.* 235 Md. at 101, 200 A.2d at 686. In addition, the defendant showed that two days after he confessed, the Crownsville State Hospital diagnosed him as having acute temporary brain syndrome. Several police officers, however, testified that the defendant's speech was coherent and his answers were rational on the day of his confession. Moreover, the State presented evidence that the symptoms and conditions of an individual withdrawing from excessive alcohol use may vary from day to day and are easily feigned.

In resolving the case, the *Wiggins* Court reasoned that "[t]he crucial question was not whether [the defendant] was suffering from the effects of withdrawal from excessive alcoholic indulgences when he gave [his confessions], but whether his disclosures to the police were freely and voluntarily made at a time when he knew and understood what he was saying." *Id.* at 102, 200 A.2d at 686. The Court concluded that there was sufficient evidence to support the trial court's conclusion that the defendant's confessions met this test. *Id.*

Thus, it is clear that under Maryland nonconstitutional law a defendant's mere mental deficiency is insufficient to automatically make his confession involuntary. Rather, a confession is only involuntary when the defendant, at the time of his confession, is so mentally impaired that he does not know or understand what he is saying.

█ In the case at bar, conflicting evidence was presented regarding Hoey's mental capacity to know and understand what he was saying at the time of his confession. On the one hand, Dr. Spodak testified that Hoey was too mentally disturbed to really understand what he was doing. Also, Hoey's father testified that Hoey was incoherent and unstable on the day before he confessed. Similarly, Hoey testified that he was incoherent when he gave his confession and remembers little of it. On the other hand, Hoey also testified that his mental condition was fine on the day he confessed and he did not hear "voices or anything" on

that day. In addition, Officer Parry testified that Hoey understood questions, spoke coherently and rationally, followed commands, and did not act peculiarly at the time he was arrested. Finally, Detective Snyder testified that Hoey comprehended questions, gave prompt, responsive answers, and did not display bizarre behavior while he was at the station after his arrest and during his confession.

After being presented with this evidence, the trial judge made the following findings of fact:

[A]s to [Hoey's] understanding of [his confessions], which was raised by Dr. Spodak's testimony, and other matters by the Defendant himself, that he didn't know he said this, that he didn't know he said that, I believe that he was in a position to make his decision there freely, voluntarily, capably.

We hold that there was sufficient testimony presented at the suppression hearing to conclude that the trial judge did not err in finding that Hoey was mentally capable of understanding what he was saying. We therefore conclude that Hoey's mental deficiency, standing alone, was insufficient to make his confession involuntary.

██ We must next determine if Hoey's confessions were given "freely and voluntarily." Under Maryland nonconstitutional law, a confession is inadmissible unless it is "shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary." *Hillard v. State*, 286 Md. 145, 150, 406 A.2d 415, 418 (1979). Thus, a confession is involuntary if it is induced by force, undue influence, improper promises, or threats. *Id.* at 151, 415 A.2d at 419. Whether particular police conduct is deemed improper depends on the totality of the circumstances surrounding the defendant's confession, and a number of factors should be considered: the defendant's age and education, the defendant's physical condition and mental capacity, the length of the interrogation, the manner of questioning, and whether there was any physical mistreatment of the defendant. *Lodowski II*, 307 Md. at 254–55, 513 A.2d at 311.

In the case at bar, evidence was presented on two possible incidents of improper police conduct. First, Hoey testified that during his interrogation Detective Snyder promised Hoey that the State would go easy on him if he confessed. Detective Snyder, however, testified that he did not make such a promise. Second, Detective Snyder testified that after Hoey orally confessed, he suggested to Hoey that he put his confession in writing to ensure that there would not be a disagreement later as to what Hoey actually admitted. Hoey acted on Detective Snyder's suggestion and reduced his confession to writing.

After reviewing this evidence, the trial judge expressly found as a fact that Detective Snyder did not make any promise of leniency in exchange for Hoey's confessions. The trial judge also found that Hoey's confessions were made "freely and voluntarily." We hold that the trial judge was not mistaken in finding that Hoey's confessions were voluntary. We therefore conclude that they were properly admitted under Maryland nonconstitutional law.

## B.

We must determine next whether Hoey's confessions were voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. In reviewing the issue of whether a confession is voluntary under the Fourteenth Amendment, we accept the trial judge's factual findings as correct unless they are clearly erroneous, and from these findings, along with a review of the entire record, make an independent determination of "the ultimate fact, namely, the existence or nonexistence of voluntariness." *Lodowski v. State,* 302 Md. 691, 711, 490 A.2d 1228, 1238 (1985), *vacated,* 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986) (*Lodowski I*); *Watson v. State,* 282 Md. 73, 84, 382 A.2d 574, 580, *cert. denied,* 437 U.S. 908, 98 S.Ct. 3100, 57 L.Ed.2d 1140 (1978).

The Supreme Court recently examined the voluntariness of a mentally impaired defendant's confession in *Colorado*

*v. Connelly, supra.* There, the defendant, Francis Connelly, approached an officer of the Denver Police Department and informed the officer that he had committed a crime and would like to discuss it with the police. The officer immediately gave Connelly the *Miranda* warnings. Connelly stated that he understood his rights, but would still like to talk to the police. When a detective from the police department arrived, Connelly was again advised of his *Miranda* rights. Connelly then proceeded to recount in detail his murder of a young girl. At a preliminary hearing, Connelly moved to suppress all of his statements. A psychiatrist employed by the state hospital testified that Connelly suffered from schizophrenia and that this disorder prevented him from making free and rational choices. On this evidence, the trial court concluded that Connelly's statements were involuntary and thus inadmissible. The Colorado Supreme Court affirmed, and the United States Supreme Court reversed.

In finding that Connelly's confession was voluntary, the United States Supreme Court stated that "by virtue of the Due Process Clause 'certain interrogation techniques ... are so offensive to a civilized system of justice that they must be condemned.'" *Id.* 107 S.Ct. at 520, *quoting Miller v. Fenton,* 474 U.S. 104, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985). The Court stressed that the focus of an inquiry into the voluntariness of a defendant's statement must be on "the crucial element of police overreaching." *Id.* Consequently, the Court concluded that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* The Court further noted that although a defendant's mental condition is relevant to his susceptibility to police coercion, an examination of the defendant's state of mind alone is insufficient to conclude the due process inquiry. A contrary rule, reasoned the court, would "require sweeping inquiries into the state of mind of a criminal defendant who has confessed, inquiries quite divorced from any coercion brought to bear

on the defendant by the State."[3] *Id.* 107 S.Ct. at 522. As the police did not coerce Connelly in any manner, and merely allowed him to confess, the Court held that his statements were voluntary.

■ Applying the Supreme Court's test for voluntariness under the Due Process Clause, we look first to determine if there was any police coercion. The only factual finding by the trial court that could amount to police overreaching was Detective Snyder's suggestion to Hoey, after Hoey had orally confessed, that a written confession would benefit Hoey. We find this action to be innocuous. Even considering Hoey's mental impairment, Detective Snyder's action cannot be deemed coercive. Rather, his action can only be viewed as neutral, if not helpful, to Hoey. Hoey had already orally confessed when Detective Snyder suggested reducing his confession to writing, and Detective Snyder merely sought to protect himself and Hoey from the conflicts that often arise when oral statements are the only evidence of an occurrence. Consequently, we find that Detective Snyder's actions were not "so offensive to a civilized system of justice that they must be condemned." Under our independent review Hoey's confessions, therefore, were not involuntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

## C.

■ We now examine one last issue regarding the admissibility of Hoey's confessions. Under *Miranda,* a state may not use any self-incriminating statement made by a defendant during custodial interrogation unless the State proves that the defendant voluntarily waived his right to remain silent and to have an attorney present during questioning.

---

**3.** The Court held that inquiry into a defendant's state of mind to determine if his statements were reliable enough to be admissible is governed by state evidentiary laws, not the United States Constitution. 107 S.Ct. at 522. We examined that issue in Part IA of this opinion.

384 U.S. at 475–76, 86 S.Ct. at 1628–29. In *Connelly*, the Court held that *"Miranda* protects defendants against *government coercion* leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." 107 S.Ct. at 524 (emphasis added). The *Connelly* Court concluded: "There is obviously no reason to require more in the way of a 'voluntariness' inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context." *Id.* at 523. Thus, a *Miranda* waiver is deemed voluntary in "the absence of police overreaching." *Id.*

In the case at bar, Hoey argues that he did not voluntarily waive his *Miranda* rights. We disagree. Detective Snyder read Hoey his *Miranda* rights and explained those rights to him. As we discussed above in Part IB, Detective Snyder did not engage in any police overreaching. Consequently, we hold that Hoey's *Miranda* waiver was voluntary and his confessions were admissible.

## II

The second question we must answer is whether Dr. Helsel's testimony was properly admitted. On January 15, 1986, Hoey attempted to commit suicide while in his jail cell. Consequently, he was transferred to Spring Grove Hospital, where Dr. Helsel, the attending physician in the ward, examined Hoey, prescribed medication, and acted as Hoey's treating physician during his stay. Prior to trial, Hoey's attorney filed a Request For Discovery under Maryland Rule 4–263, requesting the names, addresses, and statements of all expert witnesses the State intended to call at trial. The State's Attorney did not reveal Dr. Helsel's name, address, or statements to defense counsel until the day Dr. Helsel was called as a witness.

Hoey argues that Dr. Helsel's testimony should have been excluded under Md.Rule 4–263(b), which states in pertinent part:

(b) Disclosure Upon Request.—Upon request of the defendant, the State's Attorney shall:

(1) *Witnesses.*—Disclose to the defendant the name and address of each person then known whom the State intends to call as a witness at the hearing or trial to prove *its case in chief* or to *rebut alibi testimony;*

. . . .

(4) *Reports or Statements of Experts.*—Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action of each expert *consulted by the State,* including the results of any physical, or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion. . . .

(Emphasis added).

Hoey maintains that the State's Attorney's last minute disclosure of Dr. Helsel violated Rule 4–263(b)(1) or (4) and substantially prejudiced his defense. The State asserts that neither subsection (b)(1) nor (b)(4) required disclosure of information regarding Dr. Helsel. The State also argues that even if it did violate Rule 4–263(b), the sanctions for discovery violations rest within the discretion of the trial judge and there was no abuse of discretion in this case. We agree with the State that Rule 4–263(b) was not violated.

■ Rule 4–263(b)(1) requires the State's Attorney to disclose (1) witnesses in its case in chief, and (2) witnesses in rebuttal of alibi testimony. As we shall set out more fully in Part III of this opinion, the State's case in chief in a criminal prosecution consists of proving each element of a criminal offense. The State is not required to show that the defendant is criminally responsible. Instead, criminal responsibility is an issue to be raised in the defendant's case in chief. As such, any witness offered by the State to explain or disprove the defendant's evidence on criminal responsibility is, by definition, a rebuttal witness. Thus, because Dr. Helsel did not testify in the State's case in chief or in rebuttal regarding an alibi, Rule 4–263(b)(1) did not

require the State to disclose Dr. Helsel's name to Hoey's defense counsel.

■ Similarly, Rule 4–263(b)(4) did not require disclosure in this case. Subsection (b)(4) only deals with reports and statements made by experts "consulted" by the State's Attorney. Dr. Helsel did not conduct any tests on Hoey at the request of the State's Attorney. Rather, all tests conducted by Dr. Helsel were made as part of his duties as Hoey's treating psychiatrist. Therefore, Rule 4–263(b)(4) did not require Dr. Helsel's disclosure.

■ Hoey also argues that even if the letter of Rule 4–263(b) was not broken, certainly its spirit was. Hoey points out that the purpose of the discovery rule is to prevent trial by surprise and asserts that he was surprised in this case when Dr. Helsel was called as a witness. Hoey argues that Dr. Helsel should not have been treated as a rebuttal witness and his name and opinion should have been disclosed before trial. We disagree for two reasons.

First, it must be remembered that the function of a rebuttal witness is to respond to evidence presented during the opposing party's case in chief. Accordingly, until a defendant has actually completed his case in chief, the State cannot determine what evidence will need to be rebutted. Therefore, forcing the State's Attorney to disclose all possible rebuttal witnesses before trial would be a difficult if not impossible task.

Second, when a defendant enters a plea of not criminally responsible, sound preparation of the prosecution and defense of the case requires the State's Attorney and defense counsel to discover the reports and conclusions of any physician that has recently examined the defendant. Defense counsel can only obtain the names and opinions of experts consulted by the State's Attorney by requesting the State's Attorney to divulge this information. Rule 4–263(b) therefore requires the State's Attorney to supply this information to defense counsel. The names and opinions of treating physicians, however, can be obtained by defense

counsel without the assistance of the State's Attorney. The name of a treating physician can be learned from reviewing the defendant's criminal or institutional records, talking to the defendant, or talking to the defendant's guardian, parents, or friends. Consequently, defense counsel is not dependent on the State's Attorney for this information and disclosure by the State's Attorney of the names and opinions of treating physicians who may be called as rebuttal witnesses is unnecessary to prevent surprise. We therefore hold that Dr. Helsel's testimony was properly admitted.

### III

Finally, we address the question of which party bears the burden of proving the defendant's criminal responsibility. It is a basic tenet of constitutional law that the State must bear the burden of proof on every element of a criminal offense. *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Hoey argues that Maryland Code (1982, 1986 Cum.Supp.), § 12–109(b) of the Health–General Article, unconstitutionally shifted the burden of proof as to criminal responsibility to the defendant.[4] Hoey argues that § 12–109(b) requires a defendant to negate *mens rea*, an element of most offenses. Specifically, Hoey asserts that specific intent is required for a conviction of attempted storehouse burning and requiring him to prove his lack of criminal responsibility relieves the State of its constitutional burden. The State argues that a determination that a defendant has the requisite *mens rea* is separate and distinct from a determination that the defendant is criminally responsible. Thus, argues the State, as long as the State retains the burden of proof on all elements of a

---

**4.** Prior to the 1984 Laws of Md. ch. 501, § 2, the State had the burden of proving the defendant's sanity beyond a reasonable doubt. At the time of Hoey's trial Md. Health–General Code Ann. § 12–109(b) (1982, 1987 Cum.Supp.) provided: "The defendant has the burden to establish, by a preponderance of the evidence, the defense of not criminally responsible." *See Trimble v. State*, 300 Md. 387, 416, 478 A.2d 1143, 1157–58 (1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1231, 84 L.Ed.2d 368 (1985).

crime, including *mens rea,* it is constitutionally permissible to require the defendant to prove his lack of criminal responsibility. We agree with the State and explain.

 Although the Due Process Clause of the Fourteenth Amendment of the United States Constitution requires a state to prove every element of a crime beyond a reasonable doubt, it is permissible for a state to place the burden of proof on the defendant to show that he is not criminally responsible. *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). In *Leland,* the defendant was charged with first degree murder and argued that an Oregon statute, which imposed the burden of persuasion on him to prove his insanity, was unconstitutional because it required him to prove his innocence by disproving the *mens rea* element of first degree murder. The Court disagreed with the defendant's argument and held that because the State retained the burden of proof on each element of the crime charged, including premeditation, deliberation, malice, and intent, the Oregon law was constitutionally valid. *Id.* at 794, 72 S.Ct. at 1005.

The decision in *Leland* remains viable today. In *Patterson v. New York,* 432 U.S. 197, 206, 97 S.Ct. 2319, 2324, 53 L.Ed.2d 281 (1977), the Supreme Court reaffirmed its decision in *Leland* and held that "once the [elements] constituting a crime are established beyond a reasonable doubt, based on all the evidence including the evidence of the defendant's mental state, the State may refuse to sustain the affirmative defense of insanity unless demonstrated by a preponderance of the evidence." *See also Jones v. United States,* 463 U.S. 354, 368 n. 17, 103 S.Ct. 3043, 3051 n. 17, 77 L.Ed.2d 694 (1983) ("A defendant could be required to prove his insanity by a higher standard than a preponderance of the evidence.") *Citing Leland v. Oregon, supra.*

 A review of *Leland* and *Patterson* shows that a state may place the burden of proof on the defendant to establish his lack of criminal responsibility so long as the prosecution is not thereby relieved of the burden of proving

each and every element of the offense charged. Thus, if the *mens rea* requirements of a crime are the same as the requirements necessary to show a lack of criminal responsibility, the burden of proof may not be shifted to the defendant because the State would then be relieved of proving an element of the charge. Conversely, if the *mens rea* requirements of a crime are entirely distinct from the requirements necessary to show a lack of criminal responsibility, the burden of proof may be placed on the defendant to establish that he was not criminally responsible. We must therefore examine the requirements for showing a lack of criminal responsibility and the requirements for proving the *mens rea* of attempted storehouse burning, possession of a Molotov cocktail, and wearing or carrying a concealed dangerous or deadly weapon.

We begin by analyzing the *mens rea* requirements for attempted storehouse burning. Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 10(a) makes it a felony for any person to "wilfully and maliciously" attempt to set fire to any storehouse. We interpreted the two *mens rea* requirements of this crime in *Brown v. State*, 285 Md. 469, 474–75, 403 A.2d 788, 791–92 (1979), and held that the term "wilfully" means "intentionally" and the term "maliciously" means "intend[ing] to bring harm to another person."

We must contrast those two *mens rea* requirements to the requirements necessary to show that a defendant is not criminally responsible. Maryland Code (1984, 1986 Repl. Vol.), § 12–108(a) of the Health–General Article states:

A defendant is not criminally responsible for criminal conduct if, at the time of that conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity:

(1) To appreciate the criminality of that conduct; or

(2) To conform that conduct to the requirements of law.

It is evident that the requirements necessary to prove the *mens rea* for attempted storehouse burning are separate and distinct from the requirements necessary to

prove a lack of criminal responsibility. To prove the crime of attempted storehouse burning, the State must only show that the defendant intentionally attempted to burn a structure and bring harm to another person. This showing can be accomplished without proving that the defendant had a mental disorder or mental retardation that prevented him from appreciating the criminality of his conduct or conforming his conduct to the mandates of the law. Consequently, placing the burden on Hoey to prove his lack of criminal responsibility does not relieve the State of proving any element of attempted storehouse burning and is therefore constitutional.

We reach the same conclusion after reviewing the other two crimes for which Hoey was convicted. Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 139A, states that "[i]t is unlawful for any person to ... possess in this State, any device commonly known as a firebomb or a Molotov cocktail." For the State to prove a violation of this section, "it is necessary to show mere possession of the specified object, regardless of the purposes for which it may subsequently be used." *Chambers v. State,* 6 Md.App. 339, 342, 251 A.2d 30, 31–32, *cert. denied,* 255 Md. 740 (1969). Similarly, to prove that a defendant was guilty of wearing or carrying a concealed dangerous or deadly weapon under Art. 27, § 36, it is only necessary for the State to show that the defendant "carried a dangerous or deadly weapon 'concealed upon or about his person.'" *Davis v. State,* 202 Md. 463, 470, 97 A.2d 303, 306 (1953). In neither possession crime is the defendant's capacity to appreciate the criminality of his conduct or ability to conform his conduct a *mens rea* requirement of the crime. Thus, it is constitutionally sound to place the burden on Hoey to prove that he was not criminally responsible.

The result we reach today is in line with our prior decisions. In *Pouncey v. State,* 297 Md. 264, 465 A.2d 475 (1983), we held that a guilty verdict is not inconsistent with a special verdict of insanity. There, the defendant was charged with the first degree murder of her five-year old

son. The trial court found the defendant guilty of first degree murder and legally insane at the time of the offense. On appeal, the defendant argued that because she was found insane, she could not have formed the requisite intent for murder. We ruled against the defendant and upheld the guilty verdict. We stated:

> [A] finding of insanity is not tantamount to an absence of *mens rea*, or inconsistent with a general intent to commit a crime. In drowning her child, the [defendant] specifically intended to kill him, and while her successful insanity defense means that she is not criminally responsible for her conduct, that determination merely relieves her of liability for punishment under the criminal law.

297 Md. at 269, 465 A.2d at 478. Thus, in *Pouncey*, we concluded that a defendant's specific intent to commit a crime is different from a defendant's lack of criminal responsibility. *Accord Langworthy v. State*, 284 Md. 588, 599 n. 12, 399 A.2d 578, 584 n. 12 (1979) (A finding that the defendant was insane does not constitute a finding that the defendant lacked the *mens rea* or general intent to commit the crime.).

Our decision today emphasizes that evidence demonstrating a lack of *mens rea* serves a different purpose from evidence demonstrating that the defendant was insane at the time of the crime and hence not criminally responsible. The first type of evidence is offered to negate an indispensable element of the crime and bears on culpability (i.e., guilt or innocence). The second type is offered to establish insanity and impacts not upon culpability but rather upon the appropriateness *vel non* of criminal punishment.

Unfortunately, our decision in *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982), blurred this distinction when the Court said "all legally sane individuals are equally capable of forming and possessing the same types and degrees of intent." 292 Md. at 420, 439 A.2d 542. The legal implication of this holding was that nothing short of insanity could

rebut a mental element of the crime. We now disapprove that part of *Johnson.*[5]

Hoey argues that this holding of *Johnson* along with the legislature's placing the burden on the defendant to prove a lack of criminal responsibility relieves the State of its obligation to prove *mens rea,* if the defendant fails to prove he was insane. Hoey argues that such a burden is unconstitutional under *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). Indeed, it would be unconstitutional if Hoey were correct in arguing that the tests for criminal responsibility and *mens rea* are the same. However, Hoey is not correct.

We have no doubt that Hoey's mistaken premise stems from the fact that the *Johnson* opinion muddled the distinction between the concepts of criminal responsibility and *mens rea* as set forth in *Pouncey* and *Langworthy.* We now make indelibly clear that, where a particular mental element of a crime must be proved to establish the commission of a crime, evidence that it did not exist, whether due to mental impairment or some other reason relevant to that issue, is admissible. Furthermore, when an insanity defense is raised, it is the defendant's burden to prove by a preponderance of the evidence that he is not criminally responsible. Finally, it is always the State's burden to prove beyond a reasonable doubt the existence of all the elements of the crime(s) charged, and no benefit inures to the State in this regard merely because the defendant fails to prove he was insane.

Accordingly, the jury instructions given by the trial judge as to the burdens of proof were correct.

---

5. While we do not overrule that portion of Johnson which refused to recognize diminished responsibility as a separate viable defense in Maryland, insofar as that defense is asserted to negate or mitigate criminal responsibility, we do disapprove that portion of the Johnson opinion which indicated that a criminal defendant is not entitled to present evidence of his impaired mental condition for the limited purpose of showing the absence of *mens rea.*

**496**

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE COUNTY AFFIRMED. APPELLANT TO PAY
THE COSTS.