647 A.2d 1271

**Richard Lee HUTCHINS**

v.

**STATE of Maryland.**

**No. 1701, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Sept. 29, 1994.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., of Maryland on the brief), Baltimore, for appellee.

Submitted before GARRITY and MURPHY, JJ., and JAMES S. GETTY, Judge (Retired), Specially Assigned.

MURPHY, Judge.

At a bench trial in the Circuit Court for Calvert County, Richard Lee Hutchins (appellant) was convicted of stealing a 1986 Nissan Maxima. He has presented but one question for our review:

> "Did the trial court err when it refused either to exclude expert rebuttal testimony or to provide appellant with an opportunity to obtain his own experts?"

The trial court's refusal to exclude expert testimony was based on the conclusion that the State is not required to furnish the defendant with the report of an expert who is called as a rebuttal witness. That conclusion was wrong. We are, however, persuaded beyond a reasonable doubt that the error was harmless.

## FACTS

On October 28, 1992, Scott Hansen parked his Nissan at a prominent location near the Paris Oaks Shopping Center in Calvert County and put a "for sale" sign on the vehicle. The emergency brake was then working properly. He saw the vehicle again in the early morning hours of October 29, 1992, when he removed some tools from the trunk and some papers

from the glove compartment. Both the front and rear Maryland license tags were then in their correct places of display.

That evening, Mr. Hansen noticed that the car was gone. He promptly notified the Calvert County Sheriff's Department that it had been stolen. He next saw his vehicle on the following morning, after it had been recovered by the District of Columbia police. At that time, both license plates were in the trunk, papers that had been in the glove compartment were scattered throughout the passenger compartment, and the emergency brake cable was broken.

The State's case in chief established that, on the morning of October 29th, using the name of Richard Johnson, appellant hired Shubert's Towing, Inc. to tow the Nissan to 321 New York Avenue in Washington, D.C. At that location, appellant paid the tow truck operator with a check drawn on a closed account.

In his opening statement, appellant's trial counsel conceded that appellant had exercised control over the vehicle, but asserted that this was done only after appellant purchased it for $3,000.00 in cash from a man who claimed to be the owner. That man had allegedly identified himself to appellant as Chris Joblonski.[1] Appellant's counsel concluded his opening statement by telling the court:

Now, we will introduce some forms that turned out to be bogus, but they were purportedly from Giblonski [sic] where Giblonski [sic] had indicated to my client that Giblonski [sic] had purchased the vehicle out at a Sheriff's auction out in Virginia. So, that gave him the title and what he thought was a valid business transaction ...

...So, we're not disputing the facts. But he's saying he was duped into what he thought was a valid transaction.

Appellant testified as follows. He operated Richard's Auto Sales on Marlboro Pike in Capital Heights and also sold cars

---

1. In the transcript and briefs, this name is spelled "Giblonski." We shall use the spelling that appears on the business card and other exhibits that were introduced into evidence at trial.

at the Washington, D.C. lot where the Nissan was recovered. He was at the Paris Oaks Shopping Center helping a friend open a tatoo shop when he saw the man who identified himself as Chris Joblonski "showing" the Nissan to someone else. Joblonski had a key to the Nissan and told appellant that he had purchased this vehicle at "a police sale." From the documentation Joblonski showed him, appellant was convinced that the vehicle had been legitimately purchased at an auction of vehicles that had been impounded by the Arlington County (Virginia) Police Department. Appellant bought the car from Joblonski for Three Thousand Dollars ($3,000.00) in cash.

Even though appellant did not receive a Maryland registration when he bought the car, he was satisfied that Joblonski did give him sufficient documentation to obtain a valid Maryland title.[2] He did not bother to obtain a certificate of title after learning that the car was stolen. When he discovered that the car had been removed from his lot, appellant contacted the District of Columbia police. When he learned that a warrant had been issued for his arrest, he drove to Calvert County, turned himself in, tried to explain what had occurred and asked the police to look at the documentation he had received from Joblonski. He contacted the investigating officer the next day and arranged to meet with her, but she lost interest in talking to him about the case. He also filed suit against Joblonski in the District Court for Prince George's County, but could not establish that Joblonski had been served with the complaint.

Appellant claimed that the following items were turned over to him by Joblonski. Each was introduced into evidence during his direct examination:

1. A key with the letters ILCO molded into it.

2. A copy of a notarized document allegedly issued on October 26, 1992 by the Arlington County, Virginia Police

---

2. Under Maryland Code (1974, 1992 Repl.Vol.), § 13–402(b) of the Transportation Article, the license tags that were on the vehicle could not have been obtained without also obtaining a Maryland title.

Department. This document stated that, in a transaction identified as "Ref. Vehicle # 91 04 16094," on that very date, for the amount of $3,000.00, a 1986 Nissan Maxima 4–Door VIN # JN1HU11159GT131413 was sold under the authority of a Virginia statute to Day's Auto Sales, 6907 Old Branch Ave., Clinton, Md., 20745.

3. A business card containing the following information:

Day's Auto Sales

Chris Joblonski

Sales Man

6709 Old Branch Ave.

Clinton, MD 20745

Ph: 499–3555 Fax: Pager 590–4512

4. An original Maryland Dealer's Bill of Sale [3] bearing Control No. 301531;

5. An original Maryland Motor Vehicle Administration Notice of Exclusion of Modification of Implied Warranty; [4]

6. A copy of the front page of a District of Columbia Bill of Sale.

Exhibits 4, 5 and 6 were incomplete. Prominently displayed on each of these forms was a requirement that, at the time of the sale, the vehicle's odometer reading be entered at the proper place on the form. Someone had entered the vehicle's make, model and VIN number, on each form. The vehicle's odometer reading, however, had not been filled in on any of the forms.

The prosecutor was not surprised by any of the defense exhibits. As appellant's trial counsel stated in his motion for new trial:

> Several days prior to trial he gave the State a copy of the paperwork Mr. Hutchins claimed to have received from the person he bought the car from. Using this gratuitous

---

3. MVA form VR–182 (6–91)

4. MVA form CS–19 (8–83)

information the State then was able to contact two expert witnesses to devastate the defense.

The State called four rebuttal witnesses. Mr. Hansen testified that he never lost possession of his one car key. The word "Nissan" was molded onto that key. Asked to examine the key produced by appellant (on which the letters ILCO appeared), Mr. Hansen stated that he had never seen it before.

Deputy Kristine Gehrand of the Calvert County Sheriff's Office testified that within the past week she went to 6709 Old Branch Avenue in Clinton, Maryland where she learned that a business called Clinton Cycles has occupied that premises for the past eighteen years.

Melvin Richards and Fred Hardin were called as "rebuttal experts." Mr. Richards was received as "an expert auctioneer which includes buying and selling of automobiles." Mr. Hardin was received as an "expert in the dealings of buying and selling cars."

Appellant's trial counsel interposed a discovery objection to the testimony of Richards and Hardin.[5] The State responded by stating, "Your Honor, the State never knows when a defendant is going to testify ... These are rebuttal witness-

---

5. When appellant's trial counsel entered his appearance, he incorporated by reference The Defendant's Demand for Discovery and Inspection (and other motions) "copies of which are signed and dated and on file with the Clerk of the Court and the Office of the State's Attorney ..."

> The discovery document on file requested that, among other things, the State ...
> 6. Produce and permit the defendant to inspect a copy of all written reports or statements made in connection with the particular case of each expert consulted by the State, including results of any physical or mental examination, scientific test, experiment or comparison, and furnish the defendant with the substance of any oral report and conclusion made in connection with the particular case by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment or comparison; ...
> The State filed the following response to the defendant's request for discovery:
> "The defendant has been given or will avail himself of open file discovery in this case and therefore, no written answers will be filed."

es." The court ruled that the State is not obliged to disclose the conclusions of experts who are being held in reserve for possible rebuttal:

[The prosecutor] is right, they don't know whether the defendant is ever going to testify ... they would have a right to bring somebody in and try to rebut that particular testimony.

Both Richards and Hardin told the court that they had sold autos to appellant in the past and that they had never heard of Day's Auto Sales. Each expert also testified that Maryland law (1) prohibits dealers from selling anywhere other than at authorized locations, and (2) requires that, at the time of any sale, the odometer reading be filled in on the Bill of Sale and on the Notice of Exclusion or Modification of Implied Warranty. Finally, each expert testified that, in transactions between auto dealers, the "Notice of Exclusion" form is not filled out.

Mr. Richards also produced copies of records from his business, Colonial Auction Services. Those documents showed that the Arlington County Police Department form bearing "Ref. Vehicle 91 04 16 094" was notarized on August 31, 1992, and recorded the August 15, 1992 sale of a 1979 Dodge 2 Door with an odometer reading of 81,933 miles.

The defense asked the court for a two week continuance, explaining:

Your Honor, among other things we would like to have time to try to contact somebody from Dave's [sic] Auto Sales. The second thing is we would like to have time to bring in some wholesalers, talk to other wholesalers about whether they only sell on or off the lot as there has been testimony to. We would like to have time to try to track down Chris Giblonski [sic]. For those reasons we would like to have a continuance.

That request was denied.

## *DISCUSSION*

In circuit court criminal matters, discovery is con-

trolled by Rule 4–263,[6] which provides in subsection (b)(4) that, upon request of the defendant, the State shall:

> Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion.

The circuit court prosecutor who intends to call an expert during the State's case in chief must, if requested to do so, comply with two requirements: (1) Disclosure of the name and address of each person whom the State intends to call to prove its case-in-chief is required by Rule 4–263(b)(1); (2) Disclosure of the expert's report or the substance of the expert's anticipated testimony is required by Rule 4–263(b)(4).

■ Rule 4–263(b)(1) does not require disclosure of the name and address of any witnesses who may be called in rebuttal. *Hoey v. State*, 311 Md. 473, 488–489, 536 A.2d 622 (1988). Appellant contends, however, that Rule 4–263(b)(4) does require disclosure of whatever conclusions are reached by each expert "consulted" by the State—regardless of whether that expert will ever be called to the stand. We agree with that contention. There is no exception for rebuttal witnesses in Rule 4–263(b)(4).

Under Rule 16(a)(1)(d) of the Federal Rules of Criminal Procedure, the government's disclosure obligation is limited to reports of examinations and tests that "are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial." Federal prosecutors are therefore not required to make prior disclosure of test results that are offered to rebut evidence introduced by the defense. *United States v. DiCarlantonio*, 870 F.2d 1058, 1063 (6th Cir.1989), *cert. den.* 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989).

---

6. Discovery in the District Court is governed by Rule 4–262.

■ Rule 4–263(b)(4) is based on the recognition that the prosecutor is not always able to determine what is exculpatory or what is material to the defense. It avoids trial by ambush. If an agent of the State [7] has consulted an expert, the defendant is entitled to disclosure of that expert's conclusion.[8]

This disclosure obligation is easy to satisfy. It relieves the State of any obligation to determine what conclusions are exculpatory or material to the defense. It is limited to disclosure of "any ... oral or written reports by (the expert) ... not the sum and substance of (the expert's) proposed trial testimony." *State v. Wadlow,* 93 Md.App. 260, 273, 611 A.2d 1091 (1992), *aff'd* in part and *rev'd* in part on other grounds, *Wadlow v. State,* 335 Md. 122, 642 A.2d 213 (1994). Moreover, it is applicable only to conclusions of experts who have actually been "consulted." A consultation involves a request by the State that the expert perform some task in order to reach a conclusion. *Hoey, supra,* 311 Md. at 489, 536 A.2d 622.

In *Hoey,* the Court of Appeals rejected the contention that the State violated Rule 4–263(b)(4) by not furnishing defense counsel with the conclusion of the defendant's treating psychiatrist, who was called by the State to rebut evidence introduced during the defendant's case in chief. The Court recognized the important distinction between an interview and a consultation:

> Subsection (b)(4) only deals with reports and statements made by experts "consulted" by the State's Attorney. (The witness) did not conduct any tests on Hoey at the request of the State's Attorney. Rather, all tests conducted by (the witness) were made as part of his duties as Hoey's treating

---

7. The "State" is not limited to persons in the prosecutor's office. See Md. Rule 4–263(g) and *Barbee v. Warden,* 331 F.2d 842, 846 (4th Cir.1964).

8. By contrast, Rule 4–263(d)(2) limits expert witness disclosure obligation to the conclusion of "each expert whom the defendant expects to call ..."

psychiatrist. Therefore, Rule 4–263(b)(4) did not require (the witness's) disclosure.

311 Md. at 489, 536 A.2d 622.

Adequate preparation for trial will often require at least three categories of contact with experts: (1) interviews of experts whose opinions were either requested by the defense,[9] or were formed as a result of their involvement in the case at the request of someone other than a State agent,[10] (2) discussions with experts who are not asked to reach any fact-specific conclusion, but rather to educate counsel generally about the subject matter of expert testimony that will be presented at trial, and (3) consultations with experts who are sought out by the State, during the investigation phase or prosecution phase of a particular case, and asked to perform some task in order to determine whether they would be able to express a fact-specific opinion. The State has not "consulted" with the experts in categories (1) and (2). Only the third category is covered by Rule 4–263(b)(4).

█ In this case, agents of the State did "consult" with Mr. Richards and Mr. Hardin, who were shown the documents that defense counsel had given to the prosecutor, asked to examine them and then asked to be ready to provide expert testimony during the State's case in rebuttal. The decision not to call either expert during its case-in-chief relieved the State of any obligation to furnish their names and addresses under Rule 4–263(b)(1). That decision, however, did not relieve the State of its disclosure obligation under subsection (b)(4). The State violated Rule 4–263(b)(4) by refusing to disclose the substance of its experts' conclusions.[11]

---

9. *See, e.g., Morris v. State,* 59 Md.App. 659, 667–668, 477 A.2d 1206, 1209 (1984).

10. *See, e.g., Hoey, supra,* 311 Md. at 489, 536 A.2d 622.

11. It is of no consequence that the State obtained the discoverable information just prior to trial. Md. Rule 4–263(h).

■ The appropriate remedy for a discovery violation is properly left to the sound discretion of the trial judge,[12] whose remedy of choice will be affirmed on appeal unless the reviewing court is persuaded that the trial court abused its discretion. *Colter v. State,* 297 Md. 423, 426, 466 A.2d 1286 (1983). In this case, however, the trial judge did not exercise discretion. He ruled as a matter of law that the State was not required to disclose the conclusions of those experts who were being held in reserve as possible rebuttal witnesses. When the court makes a ruling as a matter of law, it is either right or wrong. *Bohnert v. State,* 312 Md. 266, 279, 539 A.2d 657 (1988); *Joiner v. State,* 82 Md.App. 282, 293, 571 A.2d 844 (1990). In this case, when he concluded as a matter of law that the State had not violated its discovery obligation, the trial judge was wrong. Reversal is therefore required unless we are persuaded beyond a reasonable doubt the error was harmless. *Colter, supra,* 297 Md. at 431, 466 A.2d 1286; *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976).

■ The erroneous ruling was harmless beyond a reasonable doubt in this case. As appellant's trial counsel pointed out in his opening statement, the documentation that would be introduced during the defendant's case was indeed "bogus." During appellant's cross examination, he conceded that, as a general rule, auto dealers do not conduct business at shopping center parking lots. He also expressed surprise that an odometer reading did not appear on any of the forms that had been introduced during his direct examination. Appellant was simply not prejudiced by opinions that were essentially consistent with his testimony.

Moreover, not everything that an expert witness testifies to is a "conclusion" within the meaning of Rule 4–263(b)(4). During its case in rebuttal, the State was entitled to introduce

---

12. Factors that the trial judge should consider when deciding on the appropriate sanction for a discovery violation by the prosecutor are listed in *United States v. Myers,* 550 F.2d 1036 at 1043 (5th Cir.1977), cited with approval by this court in *Middleton v. State,* 49 Md.App. 286, 289–290, 431 A.2d 734 (1981), a case that involved a discovery violation by defense counsel.

evidence that explained, contradicted, or directly replied to new matter that had been brought into the case by appellant. *State v. Booze*, 334 Md. 64, 70, 637 A.2d 1214 (1994). Almost all of the State's case in rebuttal consisted of fact testimony. It was, for example, a fact that appellant had introduced a copy of an Arlington County Police Department document with a transaction number that actually related to the sale of an entirely different automobile. It was a fact that Mr. Hansen never lost possession of the car key that had been made by Nissan. It was a fact that there is no Day's Auto Sales at 6709 Old Branch Avenue in Clinton, Maryland.

As to the court's refusal to grant a continuance, there was no reason whatsoever to believe that a continuance would turn up Joblonski or any other witnesses whose testimony would impeach the testimony presented by the State's rebuttal witnesses. We are persuaded beyond a reasonable doubt that the motion for continuance was properly denied.

**JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.**