663 A.2d 1281

**Richard Lee HUTCHINS**

v.

**STATE of Maryland.**

**No. 141, Sept. Term, 1994.**

Court of Appeals of Maryland.

Aug. 25, 1995.

Gary S. Offutt, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

In the instant case, we must determine whether the trial court in a criminal case erred in permitting the rebuttal

testimony of expert witnesses who had not been disclosed to the defendant prior to trial and in refusing to permit the defendant a continuance in order to prepare rebuttal to the expert testimony. We hold that the trial judge erred in admitting such testimony. We further find that the admission of the testimony was not harmless error.

I.

This case arises out of the 1993 conviction of Richard Lee Hutchins (Hutchins) for theft of an automobile valued over $300. Testimony at trial established that, on October 24, 1992, in an attempt to sell the vehicle, Scott Hanson (Hanson) parked his 1986 Nissan Maxima on a grassy strip across from the Paris Oaks Shopping Center in Calvert County.[1] Hanson placed a "for sale" sign on the vehicle. Hanson left the car at that location for about four days, stopping on the way home from work each night and driving the car back to his home. On the morning of October 29, 1992, Hanson stopped to pick up some personal items he had left in the trunk of the car and to remove some papers from the glove compartment. At that time, the license plates were on the front and rear of the automobile and both the emergency brake and the car's alarm system were working properly. On his way home, Hanson saw that the car was missing. Hanson then returned home and notified the Sheriff's Department that the car had been stolen. The car was later located and recovered by the District of Columbia police. When the car was recovered, the license plates had been removed and placed in the trunk, the brake cable had been broken, and the alarm system was damaged.

The State produced evidence indicating that on October 28 and 29, 1992, Hutchins had contacted Sherbert's Towing Inc. (Sherbert's) by phone, identifying himself as Richard Johnson, and requested that they pick up a 1986 Nissan Maxima at the Paris Oaks Shopping Center. Hutchins asked Sherbert's to

---

1. Although Hanson did not testify in the State's case in chief, the parties agreed to a stipulation as to the substance of his testimony.

tow the car to his place of business, Richard's Auto Sales, located on Marlboro Pike, where he would meet the tow truck driver. He informed Sherbert's that the brake was off and the wheels were straight, so they did not need the keys to the car to tow it. After meeting the tow truck operator at Richard's Auto Sales on Marlboro Pike, Hutchins had the driver follow him and tow the car to a lot in Washington, D.C. where the car was ultimately recovered. Hutchins paid the tow truck operator with a check that was later returned due to insufficient funds.

In his defense, Hutchins admitted that he had had the car towed, but argued that he had purchased the car from a man named Chris Joblonski (Joblonski).[2] Hutchins stated that he operated Richard's Auto Sales and also sold cars at the D.C. lot where the car was recovered. He testified that he was at Paris Oaks Shopping Center when he noticed the Nissan parked nearby. He saw Joblonski showing the car so he approached Joblonski about purchasing it. Hutchins testified that Joblonski had a key to the vehicle and that Joblonski indicated that the vehicle had been purchased by his company, Day's Auto Sales, at a police auction. Hutchins later met Joblonski at the Paris Oaks Shopping Center and exchanged $3,000 for the car. At that time, Hutchins alleged that Joblonski gave him the keys to the automobile as well as paperwork concerning the automobile, which included: (1) a notarized document purportedly issued by the Arlington County, Virginia Police Department stating that vehicle # 91 04 16 094, a 1986 Nissan Maxima 4-door with VIN number JN1HU1158GT131413 was sold for $3,000 to Day's Auto Sales; (2) a Maryland dealer's Bill of Sale; (3) a Maryland Motor Vehicle Administration Notice of Exclusion or Modification of Implied Warranty; and (4) Joblonski's business card indicating that he worked for Day's Auto Sales. Although required

---

**2.** The briefs submitted to this Court and the trial transcripts spell the name as "Giblonski." We note that a business card allegedly given to Hutchins indicates the spelling as "Joblonski" and we will therefore use that spelling, as did the Court of Special Appeals, in the context of this opinion.

by law, the paperwork did not contain the vehicle's mileage. Hutchins's counsel conceded that the paperwork turned out to be fake, but argued that Hutchins did not realize that at the time and he therefore believed he had entered into a valid business transaction.

Hutchins testified that he discovered the car was missing when he attempted to show his business partner the vehicle and found that it was no longer on the lot. When he saw that the car was gone, he went to the D.C. Police Station, where he learned that it had been confiscated and that there was a Calvert County warrant out for his arrest. Hutchins then turned himself in to the Calvert County police, presenting the paperwork that he alleged represented the sale of the car to him by Joblonski.

Following the close of the defense case, the State called two expert witnesses in rebuttal, Melvin Richards (Richards) of Colonial Auction Services and Fred Hardin (Hardin), President of Marlow Motors. Richards, an auctioneer, was accepted by the court as an "expert auctioneer which includes the buying and selling of automobiles." The State proffered that Richards would testify that in his opinion the documents produced by Hutchins as evidence of the sale of the vehicle were not authentic. Hardin was called to testify as an "expert as to the sales of autos between dealers." Defense counsel objected to the expert testimony stating:

> "I have filed a motion that if they were going to use any kind of expert witness, I'm required to—the State is required to give me who the expert witnesses are and proffer on what they're supposed to testify to.

> \*      \*      \*      \*      \*      \*

> I had given the State copies of my documentation. The first time that I found out that they supposedly had an expert witness was fifteen minutes ago from the State's Attorney. I'm clearly completely unprepared after receiving nothing despite my request to—if they're going to have an expert

testimony, I want to know who the experts are and what they're going to testify to.

\* \* \* \* \* \*

[W]e have no chance of bringing in our own experts, no knowledge of what [the expert] has already told the State's Attorney or one of the State's Attorney agents. And this is the most unfair situation that I can imagine."

The State argued that the experts were on call and that it could not have anticipated whether it was going to call the experts to testify until it knew whether the defendant would testify. The trial judge admitted the expert testimony, finding that although disclosure of the expert would be required if the State was to use the expert in its case in chief, it was not required when the expert is called in rebuttal:

"[The State doesn't] know whether the Defendant is ever going to testify. If the Defendant comes in and testifies, then I think the answer is that they would have a right to bring somebody in and try to rebut that particular testimony, particularly in a specialized field."

Richards and Hardin each testified that they had sold automobiles to Hutchins in the past and that they had never heard of Day's Auto Sales. They also testified that Maryland law prohibits dealers from selling automobiles outside of their lots other than at authorized areas and Richards testified that the law requires that the odometer reading be listed on the documents that Hutchins had produced as evidence of the sale of the automobile. They both further stated that the exclusion of implied warranty form produced by Hutchins is not filled out in transactions between dealers. Richards also introduced documentation indicating that a 1979 Dodge two door with the same reference number 910416094 as that on the documentation provided by Hutchins was sold at auction by Arlington County. Additionally, during Hardin's testimony, the State produced a document Hardin had obtained which indicated that a company named C & S Auto Sales, for which Hutchins had worked, had purchased another automobile with the reference number 910416094 from Arlington County. Richards

also testified as to how one can get a key made for a car if one does not have the keys. During the testimony of these expert witnesses, defense counsel complained that he had not previously been shown any of the exhibits used by the experts during their testimony.

At the close of the State's rebuttal case, defense counsel sought a suspension of the proceedings for one or two weeks so that he could rebut the testimony of Hardin and Richards. The court denied this request as well as a request by the defense for a judgment of acquittal. The trial judge then rendered a verdict of guilty against Hutchins.

Hutchins appealed to the Court of Special Appeals, which affirmed the trial judge. *See Hutchins v. State,* 101 Md.App. 640, 647 A.2d 1271 (1994). The intermediate appellate court held that the State was required to disclose to the defense the substance of the conclusions made by the experts whom the State had consulted. *Hutchins,* 101 Md.App. at 650, 647 A.2d at 1277. The court nonetheless held that the error in failing to make this disclosure was harmless, because the expert testimony consisted of factual testimony which supported Hutchins's own concession that the paperwork he had produced was not authentic. *Hutchins,* 101 Md.App. at 651–52, 647 A.2d at 1277. The court also held that a continuance was not required because "there was no reason whatsoever to believe that a continuance would turn up Joblonski or any other witnesses whose testimony would impeach the testimony presented by the State's rebuttal witnesses." *Hutchins,* 101 Md.App. at 652, 647 A.2d at 1277. Hutchins petitioned for a writ of certiorari which we granted to determine whether the trial judge erred in permitting the expert testimony and, if so, whether such an error is harmless beyond a reasonable doubt.

## II.

Maryland Rule 4–263(b) sets forth the information that the State's Attorney must provide to a criminal defendant upon request. Under Md.Rule 4–263(b)(1), the State must "[d]isclose to the defendant the name and address of each

person then known whom the State intends to call as a witness at the hearing or trial to prove its case in chief or to rebut alibi testimony." Maryland Rule 4–263(b)(4) requires the State to:

> "Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion."

The purpose of this discovery rule is to "assist the defendant in preparing his defense, and to protect him from surprise." *Mayson v. State,* 238 Md. 283, 287, 208 A.2d 599, 602 (1965) (discussing Md.Rule 728, a precursor to Md.Rule 4–263).

In the instant case, the trial judge appeared to refer only to Md.Rule 4–263(b)(1) and held that, because the experts were called as rebuttal witnesses rather than in the State's case in chief, the State was not obligated to disclose the experts to the defendant. We do not agree with the trial judge's interpretation of the requirements of Md.Rule 4–263. We agree that because Richards and Hardin did not testify in the State's case in chief, the State was not required to disclose these witnesses to Hutchins under Maryland Rule 4–263(b)(1). Nevertheless, whether or not Richards and Hardin testified in the State's case in chief or in rebuttal, the State was required to disclose their names and written conclusions or statements to Hutchins under Md.Rule 4–263(b)(4).

In *Hoey v. State,* 311 Md. 473, 536 A.2d 622 (1988), this Court considered the disclosure requirements set forth under Md.Rule 4–263(b)(1) and (b)(4). In *Hoey,* the State, in an effort to rebut the defendant's assertion of lack of criminal responsibility, called as an expert a psychiatrist who had treated the defendant. Defense counsel objected to the introduction of this testimony, arguing that the State had not disclosed its intention to call the psychiatrist as an expert witness. We held that disclosure of the psychiatrist's testimony was not required under either Md.Rule 4–263(b)(1) or

(b)(4). *Hoey,* 311 Md. at 488–89, 536 A.2d at 629. Addressing the required disclosure under Md.Rule 4–263(b)(1), we noted that the psychiatrist's testimony was neither part of the State's case in chief, nor an attempt to rebut alibi testimony:

> "Rule 4–263(b)(1) requires the State's Attorney to disclose (1) witnesses in its case in chief, and (2) witnesses in rebuttal of alibi testimony. . . . [T]he State's case in chief in a criminal prosecution consists of proving each element of a criminal offense. The State is not required to show that the defendant is criminally responsible. Instead, criminal responsibility is an issue to be raised in the defendant's case in chief. As such, any witness offered by the State to explain or disprove the defendant's evidence on criminal responsibility is, by definition, a rebuttal witness. Thus, because [the psychiatrist] did not testify in the State's case in chief or in rebuttal regarding an alibi, Rule 4–263(b)(1) did not require the State to disclose [the psychiatrist's] name to Hoey's defense counsel."

*Hoey,* 311 Md. at 488–89, 536 A.2d at 629.

Analyzing the necessary disclosure under Md.Rule 4–263(b)(4), we found that disclosure was only required of experts *consulted* by the State. *Hoey,* 311 Md. at 489, 536 A.2d at 629. We held that the psychiatrist had not been consulted by the State because the psychiatrist "did not conduct any tests on Hoey at the request of the State's Attorney. Rather, all tests conducted by [the psychiatrist] were made as part of his duties as Hoey's treating psychiatrist." *Id.* We therefore held that disclosure was not required under Md.Rule 2–463(b)(4). *Id.*

■ In contrast to the circumstances in *Hoey,* in the instant case, the State clearly consulted with both Richards and Hardin. The State asked them to review the documents presented by the defendant, sought information regarding the experts' lack of familiarity with Day's Auto Sales and regarding common practices between automobile dealers, and requested documents held by both experts. Additionally, in presenting the testimony of both witnesses, the State explicit-

ly offered both Richards and Hardin as experts in their fields. Thus, both Richards and Hardin were "expert[s] consulted by the State" under Md.Rule 4–263(b)(4). The State therefore had an obligation to disclose to Hutchins any written reports or statements and the substance of any oral reports and conclusions of these two experts regardless of whether or not the State expected to call Richards and Hardin to the stand to testify.

Having determined that the State violated Md.Rule 4–263(b)(4), we must determine whether such a violation constituted harmless error.

### III.

We initially note, as did the Court of Special Appeals, that the remedy under Md.Rule 4–263(i) for a violation of the discovery rule is within the sound discretion of the trial judge. *See Evans v. State,* 304 Md. 487, 500, 499 A.2d 1261, 1268 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986). In the instant case, the trial judge found as a matter of law that the State was not required to disclose the names of and conclusions of Richards and Hardin to Hutchins. The trial judge found no discovery violation and therefore exercised no discretion. As discussed above, the trial judge erred because the State did in fact violate Md.Rule 4–263(b)(4) by failing to disclose any reports or statements made by the expert witnesses, Richards and Hardin. Unless such an error was harmless, we must reverse. *See Wilson v. State,* 334 Md. 313, 338, 639 A.2d 125, 137 (1994); *Stewart v. State,* 334 Md. 213, 228, 638 A.2d 754, 761 (1994); *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

This Court set forth the standard for evaluating harmless error in *Dorsey, supra.* We stated in *Dorsey:*

"[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandat-

ed. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict." (Footnote omitted).

276 Md. at 659, 350 A.2d at 678. We have applied the standard set forth in *Dorsey* in several of our recent opinions. *See Bhagwat v. State,* 338 Md. 263, 282, 658 A.2d 244, 253 (1995); *State v. Mazzone,* 336 Md. 379, 400, 648 A.2d 978, 988 (1994); *Wilson,* 334 Md. at 338, 639 A.2d at 137; *Stewart,* 334 Md. at 228, 638 A.2d at 761; *Evans v. State,* 333 Md. 660, 683, 637 A.2d 117, 128–29, *cert. denied,* —— U.S. ——, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994); *Beales v. State,* 329 Md. 263, 274, 619 A.2d 105, 111 (1993).

In the instant case, the intermediate appellate court held that the trial judge's error was harmless beyond a reasonable doubt and did not warrant reversal. *Hutchins,* 101 Md.App. at 651, 647 A.2d at 1277. The court noted:

"As appellant's trial counsel pointed out in his opening statement, the documentation that would be introduced during the defendant's case was indeed 'bogus.' During appellant's cross examination, he conceded that, as a general rule, auto dealers do not conduct business at shopping center parking lots. He also expressed surprise that an odometer reading did not appear on any of the forms that had been introduced during his direct examination. Appellant was simply not prejudiced by opinions that were essentially consistent with his testimony."

*Id.* The court also reasoned that not everything testified to by an expert constitutes a conclusion under Md.Rule 4–263(b)(4) and that in the instant case, "[a]lmost all of the State's case in rebuttal consisted of fact testimony." *Hutchins,* 101 Md.App. at 651–52, 647 A.2d at 1277.

Relying on the reasoning of the Court of Special Appeals, the State sets forth several arguments which it asserts support a finding that the admission of the expert rebuttal testimony and the failure of the trial judge to grant the

requested continuance constitute harmless error. First, the State argues that the testimony of Richards and Hardin consisted of statements of fact, not opinion testimony, and that such factual testimony on the part of an expert is not required to be disclosed under Md.Rule 4–263(b)(4). Second, the State argues that the "facts" testified to by their rebuttal experts simply reiterated portions of Hutchins's own testimony. Finally, the State argues that in reaching his verdict, "[a]t no point did the court state that it had been influenced by any opinions or conclusions expressed by the experts as to whether or not Hutchins should have known the documents from Joblonski were phony." We find these arguments unpersuasive.

We note that had the trial judge recognized the State's obligation to disclose Richards and Hardin as experts and inform the defendant of their conclusions, Richards and Hardin may not have been permitted to testify at all. Regardless of the fact that much of Richards's and Hardin's testimony may have been factual, both witnesses were proffered and accepted by the trial judge as experts. The trial judge incorrectly ruled that, because Richards and Hardin were to testify in rebuttal, the State was not required to disclose the nature of Richards's and Hardin's expert opinions to Hutchins. Had the trial judge recognized that the State was in fact required under Md.Rule 4–263(b)(4) to make such a disclosure, he may have entirely excluded the testimony of Richards and Hardin.

We do not agree with the State that the admission of the testimony was harmless in that it merely reiterated the admitted fact that Hutchins's paperwork was counterfeit. Our review of the record indicates that while Hutchins's counsel admitted in his opening statement that the paperwork was "bogus," Hutchins's testimony attempted to show that Hutchins had been duped by Joblonski and that Hutchins had reason to believe that the paperwork was accurate. In addition to weakening Hutchins's testimony by introducing documents indicating that the vehicle identification number on the documents introduced by Hutchins actually represented an-

other car Hutchins had purchased, Richards and Hardin also may have weakened Hutchins's defense both by testifying that it was not common practice for dealers to sell cars off of their lots and by testifying that, despite their experience in the field, they had never heard of Day's Auto Sales. The testimony provided by Richards and Hardin therefore did not reiterate Hutchins's testimony, but rather, contradicted it by suggesting that Hutchins himself forged the documents by altering records for vehicles he had previously purchased.

We also cannot find beyond a reasonable doubt that the testimony of Richards and Hardin did not influence the trial judge's verdict. The transcript of the verdict contains several apparent references to the testimony of these experts and to documents introduced and referred to during their testimony:

"I had a little concern as we went along on it. Certainly using Sherbert's to take the car up really I think is indicative of someone who may not be guilty than someone who is guilty, because at first thought in the matter if he were taking it, he would take it up himself. . . .

As the testimony went on, I think that probably what may have been the case is that he didn't want to take a chance on getting it out of the county.

*I have looked over the documents, and we have the testimony* . . . . The State did make some effort . . to check [Day's Auto] and see if there was a company such as that. And *all their testimony is that there is no Day's Auto anywhere. The people, experts in the field never heard of Day's Auto anywhere* . . . .

But *when you look at [Defendant's exhibit] Number 3 and [State's exhibit] Number 7, that's what—certainly we had the testimony of the expert . . . Colonial Sales. And they had auctions. They had no problem with the fact for the last ten years everything from Arlington, Virginia, County of Virginia went through them.*

And I agree with the State's Attorney, these others look like forgeries to me. They look like they have business dealings with C & S Auto which he worked. And that's not

direct, wasn't he directly—the Defendant directly sold it. Of course, his statement is, well, somebody else forged it and it was not his. But I want to be honest with you, I don't believe anything he's saying on the basis of what I have here.

*    *    *    *    *    *

I just do not believe the Defendant and what he's saying, what he's testifying to. I think the State has made an excellent case on this. *They have even gone into some things that [defense counsel] does not feel were relevant* [3] *because they were trying to show, I think, that there was no Day's Auto Sales and that all of this that he had put on is fabricated by him.*" (Emphasis added).

It seems apparent from our independent review of the record that in reaching his verdict, the trial judge relied on the testimony of Richards and Hardin in several respects. The trial judge specifically referred to State's exhibit number seven, which was introduced by Richards in his testimony and which Hutchins's counsel argued he had never been shown prior to its introduction in court. Both Richards and Hardin also testified as to the authenticity of the documents Hutchins presented in his defense, which were marked as Defense exhibit number three. The trial judge further alluded to the testimony of the Colonial expert, being Richards, who was employed by Colonial Auction Services. Additionally, in stating that he did not believe Hutchins, the trial judge relied heavily on the testimony that there was no Day's Auto Sales.[4] Given this reliance on expert testimony that might not have been admitted had the trial judge ruled correctly as to the State's disclosure obligations, we cannot say beyond a reason-

---

**3.** Defense counsel had made relevancy objections during the testimony of Richards and Hardin.

**4.** We note that while the business card submitted by Hutchins indicates that Joblonski worked for "Day's Auto Sales," the transcript from the trial court cites the name of the business as "Dave's Auto Sales." It is unclear whether this is simply a typing error or whether in fact, Richards and Hardin were asked whether or not they had ever heard of Dave's rather than Day's Auto Sales.

able doubt that the trial judge's error in no way influenced his verdict.

Because, based upon our independent review of the record, we cannot find beyond a reasonable doubt that the trial judge's error in no way influenced his verdict, we must reverse.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CALVERT COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR CALVERT COUNTY FOR A NEW TRIAL. COSTS TO BE PAID IN THIS COURT AND THE COURT OF SPECIAL APPEALS BY CALVERT COUNTY.*